[No. 31481. *En Banc.* October 4, 1950.]

THE STATE OF WASHINGTON, *on the Relation of Elmer Melville, Plaintiff*, v. THEODORE S. TURNER, *Judge of the Superior Court for King County, Respondent.*[1]

*Arthur A. Giblin,* for relator.
*Ralph B. Potts,* for respondent.

DONWORTH, J.—Elmer Melville, as relator, made application to this court for a writ of review directing the superior court for King county, Honorable Theodore S. Turner, judge, to certify to this court for review the records and proceedings in two divorce actions entitled "Esther Melville, Plaintiff, vs. Elmer A. Melville, Defendant," No. 345248, and "Esther Melville, Plaintiff, vs. Elmer A. Melville, Defendant," No. 354975.

In response to the alternative writ of review issued, Judge Turner certified and returned to this court a complete transcript of the proceedings in these divorce actions.

The record before us shows the following: On July 7, 1943, Esther Melville, as plaintiff, commenced a suit for divorce against the relator on the grounds of cruelty and nonsupport (cause No. 345248). Personal service of summons and complaint was made upon relator. Upon his failure to appear, an order of default was entered against relator. The

[1] Reported in 222 P. (2d) 660.

plaintiff was granted an interlocutory decree of divorce November 2, 1943, based upon findings of fact substantially similar to the allegations of the complaint. By this decree the plaintiff was awarded as alimony the sum of seventy-five dollars per month for a period of two years. The parties had no children and no property except household furniture of little value.

Approximately nine months later (August 1, 1944), the plaintiff (represented by other counsel) commenced another action for divorce against the relator in the same court and upon the same grounds. At this time the interlocutory decree in the first action had not been vacated nor had any appeal been taken therefrom. Relator had made all payments of alimony as required by that decree.

The allegations of the complaint in the second divorce action (cause No. 354975) were substantially the same as those in the first divorce action with the addition of an allegation that the parties had separated on June 18, 1944. This date was subsequent to the entry of the interlocutory decree in the first action.

Personal service of process in the second action was made upon relator and again an order of default was duly entered because of his failure to appear in the action. The interlocutory decree in this second action was entered September 15, 1944. The court included in its findings of fact the following:

". . . that the parties hereto separated on June 18th, 1944, and have continuously since lived separate and apart."

By this decree the plaintiff was awarded, and the relator was required to pay, the sum of one hundred dollars per month for her support until further order of the court. The plaintiff obtained a final decree of divorce in this second action August 2, 1946.

Relator complied with the second interlocutory decree for more than five years by paying one hundred dollars per month to the plaintiff until December, 1949, when he defaulted by paying only twenty dollars. Since then, he has made no payments to his former wife.

Because of his default in the payments, the relator was ordered to show cause on May 3, 1950, why he should not pay to the plaintiff the delinquent alimony payments (then amounting to $480) and continue to make such payments or, in the alternative, be adjudged in contempt of court.

On this same day, prior to the contempt hearing, relator procured a final decree of divorce in the first action (cause No. 345248) upon the filing of an affidavit that marital relations had not been resumed by the parties since the granting of the interlocutory order of divorce (November 2, 1943).

At the contempt hearing, the trial court entered an order to the effect that if the relator paid the sum of one hundred dollars to the plaintiff within one week he would not hold the relator in contempt for any failure to make payments as provided for in the decree in cause No. 354975. The relator failed to make the payment within the allotted time and was ordered on June 8, 1950, to show cause why he should not be adjudged in contempt for failure to obey the order of the court.

Relator filed an affidavit and answer to the show cause order wherein he alleged that he was unable to make the payment of one hundred dollars because his current earnings were insufficient to pay his current living expenses. He further stated that the show cause order was made under a judgment voidable for want of jurisdiction, since the second divorce decree was obtained without the first divorce decree being vacated in any respect. The trial judge was advised by relator that he had filed an action in the superior court to vacate and set aside the interlocutory and final decrees in cause No. 354975. The contempt proceeding was heard by Judge Turner, who orally announced at the conclusion of the hearing that he would find relator in contempt, but at the request of relator's counsel withheld entry of judgment to permit relator to apply for the present writ of review in this court.

The legal question involved is whether the second interlocutory decree is voidable upon attack by relator in

this contempt proceeding because of the existence of the first interlocutory decree.

■ From our examination of the record, we have come to the conclusion that this court cannot determine the question whether the second interlocutory decree is voidable upon attack by relator due to the existence of the first interlocutory decree. The reason for so concluding is that Judge Turner entered no order punishing the relator for the alleged contempt and, therefore, there is nothing which this court can review in this proceeding.

In *State ex rel. Thomas v. Lawler*, 23 Wn. (2d) 87, 159 P. (2d) 622, this court in a unanimous *En Banc* decision held that a writ of review serves the same purpose as an appeal and that, since no final order had been entered by the trial court in that case, the writ of certiorari had been issued prematurely and the proceeding must be dismissed.

The basis for so holding is stated in the following quotation from the opinion:

"It is stated in the brief of respondent that the trial judge rendered an oral decision at the close of the hearing, and that the clerk made a minute entry that an application for writ of *habeas corpus* was denied by the court, but his contention is that in order to successfully prosecute an appeal or writ of review an appellant or petitioner must predicate the same upon a final order or judgment. This contention must be sustained. An appeal to this court will not lie from anything other than a formal written final order or judgment signed by the judge and entered upon the records of the court, unless otherwise authorized by statute. *Robertson v. Shine*, 50 Wash. 433, 97 Pac. 497; *State v. Diamond Tank Transport*, 200 Wash. 206, 93 P. (2d) 313. In the *Robertson* case, we said:

" 'The respondent moves in this court to dismiss the appeal on the ground that it is premature, as no final judgment has been entered in the cause. The motion must be granted. In the absence of an express statute permitting the practice, no appeal will lie from intermediary orders made by the court, nor from rulings and decisions not expressed in a final judgment. We have no statute permitting an appeal from a decision such as was here made by the court. The so-called judgment was nothing more than an announcement of the court of its conclusions from the evidence, which must

be expressed in a formal written judgment before it becomes binding upon either party. As no such judgment was entered there is nothing from which an appeal can be taken.'

"A writ of review issued by this court serves the same purpose as an appeal, and the rule above stated necessarily applies."

Since no final order was entered by the trial court in this case, the writ of review must be held to have been applied for and issued prematurely and this proceeding is accordingly hereby dismissed.

ALL CONCUR.